Eugene Killian, Jr., Esq.
The Killian Firm, P.C.
48 Wall Street, 11th Floor
New York, NY 10005
212-537-3866

Attorneys for Plaintiffs
Molly C. and Naomi L., on behalf of themselves
and all others similarly situated


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

| | |
|---|---|
| MOLLY C. AND NAOMI L., ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | 21-CV-_____ |
| | **CLASS ACTION** |
| Plaintiffs, | **COMPLAINT FOR:** |
| -against- | **BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974; ENFORCEMENT AND CLARIFICATION OF RIGHTS; INJUNCTIVE RELIEF; PREJUDGMENT AND POSTJUDGMENT INTEREST; ATTORNEYS' FEES AND COSTS** |
| OXFORD HEALTH INSURANCE, INC., | |
| Defendant. | |

-----------------------------------------------------------------X

Plaintiffs Molly C. and Naomi L., on behalf of themselves and all others similarly

situated ("Plaintiffs"), herein complain against Oxford Health Insurance, Inc. ("Oxford") as

follows:

## INTRODUCTION

1.      Molly C. is a 22 year old woman treated for an eating disorder in 2019 and 2020.

Plaintiff Naomi L. is a 24 year old woman treated for an eating disorder, bulimia nervosa, in 2019

and 2020. Both were denied outpatient nutritional counseling for treatment of their eating disorders under healthcare plans written and administered in a deficient manner by Oxford.

2.      Approximately 20 million women and 10 million men suffer from a clinically significant eating disorder at some time in their life. Eating disorders are the third most common chronic illness among adolescents, and the incidence of eating disorders in the United States has doubled since the 1960s. Eating disorders have the highest mortality rate of any mental illness, in excess of 20 percent. They can lead to medical complications including cardiac arrhythmia, heart failure, kidney stones and kidney failure, cognitive impairment, osteoporosis, constipation, electrolyte imbalance, muscle atrophy, amenorrhea, teeth erosion, irritation and tears of the throat, esophagus and stomach, emetic toxicity, infertility, and death. Suicide, depression, and severe anxiety are common side effects throughout the illness and treatment.

3.      The good news is that, despite their prevalence and seriousness, eating disorders are treatable. Nevertheless, while they can be fully and successfully treated to remission, only 10 percent of those suffering from an eating disorder receive treatment. For many eating disorder patients, an essential treatment component is nutritional counseling and/or dietician services. In this case, Oxford wrongfully denied both Molly and Naomi's claims for outpatient nutritional counseling for their eating disorders.

4.      Although Oxford denied Plaintiffs' nutrition claims, the company provides coverage under Plaintiffs' health plans for nutrition counseling for physical conditions such as diabetes. Oxford's denials for mental health nutritional counseling breached its fiduciary duties and its obligation to provide mental health benefits at a level on par with physical condition benefits.

## STATUTORY BACKGROUND

5.       The Employee Retirement Income Security Act of 1974 ("ERISA") contains provisions that mandate parity in mental health and addiction benefits, which were enacted as part of the Mental Health Parity and Addiction Equity Act ("MHPAEA"). These provisions require that any benefits for mental health or substance use disorders offered under an ERISA-covered healthcare plans be on a par with other medical and surgical benefits. 29 U.S.C. § 1185a.

6.       ERISA also contains provisions that mandate that plan fiduciaries operate the plan prudently and in the sole interests of the plan participants and beneficiaries, for the exclusive purpose of providing benefits to the participants and beneficiaries and defraying reasonable plan expenses, and in accordance with plan terms to the extent that the terms do not otherwise conflict with ERISA. 29 U.S.C. § 1104(a)(1)(A), (B), (D).

7.       ERISA requires plans to provide both adequate written notice of the reasons for any denial of benefits and the opportunity to obtain full and fair review of any denial. 29 U.S.C. § 1133.

8.       Finally, as relevant here, ERISA empowers plan participants and beneficiaries to sue in federal court to obtain benefits due them, to enforce their rights under the terms of the plan, to clarify their rights to future benefits, 29 U.S.C. § 1132(a)(1)(B), to obtain appropriate equitable or remedial relief to remedy fiduciary breaches, 29 U.S.C. § 1132(a)(3), to enjoin any act that violates Title I of ERISA or the terms of the plan, or to obtain other appropriate equitable relief to remedy any such violation or to enforce any of the provisions of Title I or the terms of the plan.

## FACTUAL ALLEGATIONS

9.       This action is brought under 29 U.S.C. § 1132(a), (e), (f) and (g) as it involves claims by Plaintiffs for mental health benefits under an employee benefit plan regulated and governed under ERISA.

10.     Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

11.     This action is brought to obtain injunctive, declaratory, and other equitable and remedial relief to enforce the rights of the named Plaintiffs and all class members to have their benefit claims administered in compliance with the requirements of ERISA and the terms of their plans. Plaintiffs seek relief, including but not limited to, payment of health benefits; declaratory and injunctive relief clarifying the manner in which claims must be administered in the future; injunctive relief requiring that claims denied during the class period be re-reviewed in compliance with the law; prejudgment and post-judgment interest; and attorneys' fees and costs.

12.     This action seeks to represent the named Plaintiffs and all individuals who were covered under ERISA group health plans underwritten and/or administered in New York by Oxford. The proposed class only includes persons who were covered under plans regulated by ERISA.

13.     Plaintiff Molly C. is and was at all relevant times, a resident of New York City, New York. Plaintiff proceeds under a pseudonym "Molly C." to protect her privacy due to the sensitive mental health diagnoses and treatment involved in this matter.

14.     Plaintiff Naomi L. is and was at all relevant times, a resident of New York City, New York. Plaintiff proceeds under a pseudonym "Naomi L." to protect her privacy due to the sensitive mental health diagnoses and treatment involved in this matter.

15.     Plaintiffs were at all times relevant beneficiaries under employee health benefit plans underwritten and/or administered by Oxford in the State of New York and regulated by ERISA and pursuant to which Plaintiffs were entitled to mental health benefits.

16.     Defendant Oxford is and, at all relevant times was, a corporation authorized to transact business in the State of New York. Oxford operates under the trade name "Oxford" or "Oxford Health Plans."

17.     Oxford is an ERISA fiduciary with respect to Plaintiffs' plans and the plans of all putative class members in that Oxford exercises discretionary authority or discretionary control with respect to the management of the plans; exercises discretionary authority or discretionary control with respect to the management or disposition of the assets of the plans; or has discretionary authority or discretionary responsibility in the administration of the plans. 29 U.S.C. § 1002(21)(A).

18.     The claims of the named Plaintiffs in this action were specifically administered in this judicial district. Thus, venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) (special venue rules applicable to ERISA actions).

19.     Plaintiffs reside in this district, Defendant can be found in this judicial district, and the Plan is administered in this district. Thus, venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2).

20.     At all times relevant, Plaintiffs Molly C. and Naomi L. and the members of the proposed plaintiff class as defined below (the "Plaintiff Class"), were covered by health plans administered and/or underwritten by Oxford, each of which provided benefits for medically necessary treatment of mental illnesses, including eating disorders.

21.     Plaintiffs and the members of the Plaintiff Class have (a) paid all premiums they were required to pay under said health plans, (b) performed all obligations under said plans on their part to be performed, and (c) complied with all requirements under said plans, including appeal and/or grievance procedures that are deemed mandatory, as well as provided all proper documentation regarding their claims. Plaintiffs and the members of the Plaintiff Class have been

diagnosed with one or more of the following mental disorders: anorexia nervosa, bulimia nervosa, eating disorder not otherwise specified ("EDNOS"), binge eating disorder ("BED"), or avoidant/restrictive food intake disorder ("ARFID") (collectively "eating disorders").

### Plaintiff Molly C.'s ERISA Plan

22.     At all relevant times and to present, Plaintiff Molly C. was covered under an Oxford Freedom Plan ("Freedom Plan"), Group No. WW7866, issued to her father, Neal C. *See* Exhibit A.

23.     The Freedom Plan is governed by ERISA and is insured and administered by Oxford.

24.     The Freedom Plan provides benefits for mental health treatment. *See* Exhibit A-0081-0083.

25.     The Freedom Plan and MHPAEA require that benefits for mental health treatment are no more restrictive than benefits for medical and surgical treatment. 29 U.S.C. § 1185a; Exhibit A-0081.

26.     The Freedom Plan covers outpatient mental health care services "relating to the diagnosis and treatment of mental, nervous and emotional disorders." Exhibit A-0082.

27.     The Freedom Plan provides benefits for diabetes "self-management education" which includes "education on self-management and nutrition when: diabetes is initially diagnosed, a Physician diagnoses a significant change in Your symptoms or condition which necessitates a change in Your self-management education; or when a refresher course is necessary." Exhibit A-0073. The education must be provided by a designated specialist such as a "certified nutritionist, certified dietician; and registered dieticians in a group setting when practicable." *Id.* at 0073-0074.

**<u>Plaintiff Molly C.'s Request for Nutritional Counseling Benefits</u>**

**<u>for Treatment of an Eating Disorder</u>**

28.     Plaintiff Molly C. has history of major depressive disorder, AFRID, and generalized anxiety disorder for which she received residential treatment in 2019.

29.     Following residential treatment, Molly C. sought and received outpatient treatment at Balance Eating Disorder Treatment Center ("Balance") in New York in 2019. Molly C.'s treatment included group, family and individual psychotherapy and group and individual nutrition counseling.

30.     Plaintiff Molly C., through Balance, submitted claims to Oxford for group and individual nutritional counseling treatment for dates of service August 6 through 30, 2019.

31.     In Explanations of Benefits ("EOBs") issued in September and October 2019, Oxford denied all the claims for Molly C.'s nutritional counseling at Balance. The EOBs provided a footnote as explanation for the denial: "D1 – Payment for services are denied. This is not a covered benefit."

32.     In the same EOBs, Oxford paid claims for Molly C.'s psychotherapy at Balance.

33.     On January 17, 2020, Molly C. appealed the denials for dates of service August 6 through 30, 2019 through counsel and provided the pertinent claims numbers and signed releases for information and authorization forms. Molly C.'s counsel wrote that Oxford's EOBs failed to explain the basis for denial and failed to cite pertinent Plan provisions relied on for denial, as required by ERISA.

34.     On January 28, 2020, Oxford wrote to Molly C.'s counsel and requested a signed authorization.

35.     On February 10, 2020, Molly C.'s counsel returned the requested signed authorization to Oxford.

36.     On February 19, 2020, Optum (a related Oxford company) wrote to Molly and stated it was unable to process the request as an appeal with the information provided. Optum wrote that the appeal request must include a "*clearly expressed* desire for reconsideration" and requested Molly provide the member information, dates of service, and appeal letter. (Emphasis in original.)

37.     On March 3, 2020, Molly C.'s counsel wrote to Optum that the requested information was provided to Oxford in the prior appeal letter and authorization. Molly C.'s counsel also provided Molly C.'s subscriber identification number, the dates of service, and enclosed the appeal letter and authorization. Molly C.'s counsel requested that Oxford direct all related communications to Molly C.'s counsel.

38.     On April 12, 2020, Oxford wrote directly to Molly C. and stated that it had paid claims. The paid claims referenced by Oxford were for psychotherapy sessions, not nutritional counseling.

39.     On June 2, 2020, Molly C.'s counsel wrote to Oxford and requested an appeal decision. Her counsel wrote that Oxford had not issued a first level appeal decision regarding the nutritional counseling claims for Molly C.'s treatment of an eating disorder. Molly C.'s counsel wrote that Oxford's EOBs failed to explain the basis for denial and failed to cite pertinent Plan provisions relied on for denial, as required by ERISA.

40.     Oxford did not provide an appeal decision to Molly C. or her counsel.

41.     As a result of the denials, Molly C. assumed payment responsibility for her nutritional counseling at Balance.

42.    Oxford's denial of Molly C.'s request for nutritional counseling at Balance violated the plain terms of the Freedom Plan and MHPAEA and was a breach of fiduciary duty. Although the plan is required to comply with MHPAEA and states that it does so, the coverage for nutritional services applies only to patients with a medical diagnosis (*i.e.,* diabetes). Despite having notice of this defect in the plan, Oxford wrongly refused to provide benefits for nutritional counseling to Molly C., who has a mental health diagnosis.

### Plaintiff Naomi L.'s ERISA Plan

43.    At all relevant times and to present, Plaintiff Naomi L. was covered under an Oxford Liberty Plan ("Liberty Plan"), Group No. YL1071, issued to her mother, Elana L. *See* Exhibit B.

44.    The Liberty Plan is governed by ERISA and is insured and administered by Oxford.

45.    The Liberty Plan provides benefits for mental health care. Exhibit B -0123-0126 (2009 Amendment).

46.    The Liberty Plan covers outpatient mental health care services including diagnosis, treatment planning, referral services, medication management, and crisis intervention. *Id.* at 0123-0124.

47.    The Liberty Plan provides benefits for "Diabetes Supplies, Education and Self-Management." *See* Exhibit B-0081-0082. Specifically, the Liberty Plan provides "Self-Management and Education" which includes "education on self-management and nutrition" when diabetes is initially diagnosed, a significant change in the Member's condition takes place, or the physician decides that a refresher course is necessary." *Id.* at 0082. The education must be provided by a designated specialist such as a "certified nutritionist, certified dietician; and registered dieticians." *Id.* The Plan requires that whenever possible the services should take place in a group setting. *Id.*

<u>**Plaintiff Naomi L.'s Request for Nutritional Counseling Benefits**</u>

<u>**for Treatment of an Eating Disorder**</u>

48.     Plaintiff Naomi L. has history of an eating disorder, bulimia nervosa.

49.     Naomi L. sought and received outpatient treatment for her eating disorder at Balance Eating Disorder Treatment Center ("Balance") in New York in 2019 and 2020. Naomi L.'s treatment at Balance included group, family and individual psychotherapy and group and individual nutrition counseling.

50.     Plaintiff, through Balance, submitted claims to Oxford for group and individual nutritional counseling treatment for dates of service from October 30, 2019, to February 13, 2020.

51.     In EOBs, Oxford denied all the claims for Naomi L.'s nutritional counseling at Balance. The EOBs provided a footnote as explanation for the denial: "D1 – Payment for services are denied. This is not a covered benefit."

52.     On July 7, 2020, Naomi L. appealed the denials through her counsel and provided the pertinent claims numbers, dates of services, and signed authorization form. Naomi L.'s counsel wrote that Oxford's EOBs failed to explain the basis for denial and failed to cite pertinent Liberty Plan provisions relied on for denial, as required by ERISA.

53.     On July 30, 2020, Oxford wrote that it upheld the denial based on the Liberty Plan provision: "We do not Cover services that are not listed in this Certificate as being Covered."

54.     On September 29, 2020, Naomi L.'s counsel submitted a second level appeal explaining that the Liberty Plan covers nutritional counseling pursuant to MHPAEA and requested benefits for Naomi L.'s nutritional counseling for a mental illness, an eating disorder, because the Liberty Plan provided benefits for similar services for patients diagnosed with a physical condition (*i.e.,* diabetes).

55.     On October 12, 2020, Oxford wrote that it denied the second appeal based on the Liberty Plan provision: "We do not Cover services that are not listed in this Certificate as being Covered."

56.     As a result of the denials, Naomi L. assumed payment responsibility for her nutritional counseling at Balance.

57.     Oxford's denial of Naomi L.'s request for nutritional counseling at Balance violated the plain terms of the Liberty Plan and MHPAEA and was a breach of fiduciary duty. Although the plan is required to comply with MHPAEA and states that it does so, the coverage for nutritional services applies only to patients with a medical diagnosis (*i.e.*, diabetes). Despite having notice of this defect in the plan, Oxford wrongly refused to provide benefits for nutritional services to Molly C., who has a mental health diagnosis.

### Naomi L.'s Treatment with Ashley Perrone

58.     Naomi L. sought and received outpatient nutritional counseling with Ashley Perrone, registered dietician, in New York in 2019 and 2020.

59.     Plaintiff submitted claims to Oxford for individual nutritional counseling treatment with Ms. Perrone for dates of service from January 10, 2019, to December 13, 2019.

60.     In EOBs issued in January 2020, Oxford denied the claims for Naomi L.'s nutritional counseling with Ms. Perrone. The EOBs provided a footnote as explanation for the denial: "D1 – Payment for services are denied. This is not a covered benefit."

61.     On March 12, 2020, Naomi L. appealed the denials through her counsel and provided the dates of service, pertinent claims numbers, and signed authorization form. Naomi L.'s counsel wrote that Oxford's EOBs failed to explain the basis for denial and failed to cite pertinent Liberty Plan provisions relied on for denial, as required by ERISA.

62.     In several letters dated between March 18-30, 2020, Oxford wrote to Ms. Perrone and requested an authorization form to be signed by Naomi L. On May 1, 2020, Naomi L. provided the signed authorization form to Oxford.

63.     On June 17, 2020, Naomi L.'s counsel wrote to Oxford and requested an appeal decision.

64.     On July 7, 2020, Naomi L.'s counsel submitted an appeal regarding additional denials for claims for nutritional counseling with Ms. Perrone for dates of service in December 2019 and January 2020 and provided the dates of service, pertinent claim numbers, and signed authorization forms. Naomi L.'s counsel wrote that Oxford's EOBs failed to explain the basis for denial and failed to cite pertinent Liberty Plan provisions relied on for denial, as required by ERISA.

65.     Oxford did not provide appeal decisions to Naomi L. or her counsel regarding either appeal.

66.     As a result of the denials, Naomi L. assumed payment responsibility for her nutritional counseling with Ms. Perrone.

67.     Oxford's denial of Naomi L.'s request for nutritional counseling with Ms. Perrone violated the plain terms of the Liberty Plan and MHPAEA and was a breach of fiduciary duty. Oxford refused to provide benefits for nutrition counseling to patients with a mental health diagnosis despite the Liberty Plan providing benefits for nutrition services to patients with a physical diagnosis (*i.e.*, diabetes).

## **CLASS ACTION ALLEGATIONS**

68.     Plaintiffs bring this action on behalf of themselves and all others similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23. This action has been brought and may

properly be maintained as a class action under the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed class is ascertainable.

69.    Plaintiff seeks to represent a class composed of and defined as follows:

All persons who were covered under an ERISA group health plan underwritten and/or administered by defendant Oxford Health Insurance, Inc., which was issued, amended, or renewed in the State of New York , who were diagnosed with (1) anorexia nervosa, (2) bulimia nervosa, (3) eating disorder not otherwise specified (EDNOS), (4) binge eating disorder (BED), or (5) avoidant/restrictive food intake disorder (ARFID) and whose request for authorization or claim for reimbursement for nutritional counseling or dietician services was made between November 30, 2015 and the present ("Class Period") and was denied.

70.    The proposed class is limited to participants and beneficiaries of plans issued by Oxford in New York. The proposed classes include only plans governed by ERISA. The proposed class does not include Subscribers and Members of individual PPO plans and other non-ERISA plans.

71.    Plaintiffs reserve their rights to modify the definition of the proposed class based on information that they or their counsel learn through discovery.

72.    The class meets all the requirements of Federal Rule of Civil Procedure 23, as follows.

## Numerosity

73.    The potential members of the proposed class as defined are so numerous that joinder of all the members of the proposed class is impracticable. While the precise number of proposed class members has not been determined at this time, Plaintiffs are informed and believe that there is

a substantial number of individuals covered under Oxford plans who have been similarly affected. Numerosity of class members will be ascertained and confirmed by discovery. The number and identity of the members of the class are readily determinable from the records of Oxford. Class members may be notified of the pendency of this class action by mail.

## Commonality

74.     There are questions of law and fact common to the proposed class that predominate over any questions affecting only the individual class members. These common questions of law and fact include, without limitation: Whether Oxford's plans violate ERISA by violating MHPAEA; whether Oxford breached its fiduciary duties by not providing nutrition counseling and/or dietician services benefits; and what remedies are available to the class.

## Typicality

75.     The claims of the named Plaintiffs are typical of the claims of the proposed class. Plaintiffs and all members of the proposed class sustained the same or similar injuries arising out of and caused by Oxford's common course of conduct in violation of laws and regulations that have the force and effect of law. Plaintiffs' claims are thereby representative of, and largely co-extensive with, the claims of the Plaintiff Class members.

## Adequacy of Representation

76.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the proposed class. There are no conflicts between the interests of the Plaintiffs and the other members of the proposed class. Counsel representing Plaintiffs is competent and experienced in litigating class actions, ERISA claims, mental health parity claims, and eating disorder benefit claims.

## Superiority of Class Action

77.     A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all proposed class members is not practicable, and questions of law and fact common to the proposed class predominate over any questions affecting only individual members of the proposed class. Each member of the proposed class has been damaged and is entitled to recovery by reason of Oxford's conduct in denying nutritional counseling and/or dietician benefits for claimants diagnosed with or seeking treatment for eating disorders. They have little incentive, if any, to prosecute their claims independently, and given their mental illness, would be unlikely to find counsel to represent them. The only practical mechanism for them to vindicate their rights in this instance is through class treatment of their claims, which is convenient, economical, consolidates all claims in a single suit, and serves to avoid a multiplicity of suits.

78.     Oxford has acted, or refused to act, on grounds that apply generally to the class, so that final injunctive, monetary and/or declaratory relief is appropriate as to the class as a whole. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## FIRST CLAIM FOR RELIEF

## DENIAL OF PLAN BENEFITS AND CLARIFICATION OF RIGHTS,

## PRE-JUDGMENT AND POST-JUDGMENT INTEREST, AND ATTORNEYS' FEES

### (29 U.S.C. § 1132(a)(1)(B))

79.     Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

80.     At all times relevant, Plaintiffs were beneficiaries of employee health benefit plans administered and/or underwritten by Oxford and governed by ERISA.

81.     Under the terms of the plans and applicable law, Oxford was required to provide nutritional counseling and/or dietician services to Plaintiffs and the putative class members for the diagnosis and/or treatment of anorexia nervosa, bulimia nervosa, EDNOS, BED, or AFRID.

82.     While covered under their plans, Plaintiffs became entitled to benefits under the terms and conditions of the plans and the law. Specifically, Plaintiffs suffered from eating disorders and sought outpatient nutritional counseling and/or dietician services.

83.     Oxford improperly denied Plaintiffs' claims for treatment by improperly applying the plan terms and failing to comply with the law.

84.     Plaintiffs performed all duties and obligations on their part to be performed under the plans. Specifically, Plaintiffs complied with the plans' requirements regarding the submission of claims and all relevant appeals and/or grievance procedures.

85.     Oxford's denials of the claims of the Plaintiffs violated the plain terms of their plans, as regulated by ERISA and implementing regulations, including the provisions of MHPAEA incorporated into their plans.

86.     Oxford's application of its plans is not in compliance with MHPAEA and therefore violates ERISA.

87.     To remedy Oxford's wrongful conduct, Plaintiffs seek payment of benefits for submitted claims for nutritional counseling and/or dietician services as such claims were denied solely on the erroneous basis that the plans exclude nutritional counseling and/or dietician services benefits for eating disorders.

88.     Alternatively, Plaintiffs seek a clarification of their rights under the plans and an order remanding the denied claims to Oxford for reevaluation on the merits pursuant to 29 U.S.C. § 1132(a)(1)(B) and (a)(3) in accordance with the requested injunctive relief under the Second Claim for Relief.

89.     Plaintiffs further seek payment of attorneys' fees and costs, which Plaintiffs are entitled to have paid by Oxford. 29 U.S.C. § 1132(g)(1).

<u>**SECOND CLAIM FOR RELIEF**</u>

<u>**FOR BREACH OF FIDUCIARY DUTY**</u>

<u>**AND AWARD OF ATTORNEYS' FEES**</u>

**(29 U.S.C. §§ 1132(a)(3))**

90.     Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

91.     Oxford breached its fiduciary duties by applying its plans terms in violation of MHPAEA, incorporated into the plans under ERISA. Specifically, Oxford refused to provide counseling and/or dietician services to Plaintiffs and the putative class members for diagnosis and/or treatment of anorexia nervosa, bulimia nervosa, EDNOS, BED, or AFRID.

92.    To remedy these breaches, Plaintiffs are entitled to and hereby request that this Court grant the following relief pursuant to 29 U.S.C. § 1132 (a)(1)(B), (a)(3):

    a)    A declaration that Oxford's interpretation of the plans violates MHPAEA and ERISA;

    b)    An injunction requiring Oxford to revise its plans and/or its processing of claims to comply with MHPAEA and ERISA;

    c)    An order requiring payment of claims for nutritional counseling and/or dietician services benefits under the terms of the plans as properly interpreted;

    d)    Alternatively, reformation of the plans to clarify that the plans provide coverage for nutritional counseling and/or dietician services for eating disorders and an order remanding to Oxford for reevaluation on the merits of the denied claims of all class members once the plans are revised to comply with MHPAEA; and

    e)    Disgorgement of any profits Oxford may have realized by virtue of its violation of MHPAEA and other fiduciary breaches.

93.    Plaintiffs further seek payment of attorneys' costs and fees, which Plaintiffs are entitled to have paid by Oxford. 29 U.S.C. § 1132(g)(1).

## REQUEST FOR RELIEF

Wherefore, Plaintiffs pray for judgment against the Defendant as follows:

1.    Certification of this case and these claims for class treatment, with the class as set forth in this complaint;

2.    Designating Plaintiffs Molly C. and Naomi L. as representatives for the class;

3.    Designating Lisa S. Kantor, Elizabeth K. Green, Kathryn M. Trepinski and Eugene Killian, Jr. as counsel for the class;

4.    A declaration that Oxford's plans violate MHPAEA and ERISA;

5.      An injunction requiring Oxford to comply with MHPAEA and ERISA;

6.      An injunction requiring Oxford to reform its plans to clarify that the plans provide coverage for nutritional counseling and/or dietician services;

7.      An order requiring payment of all claims of Plaintiff's and class members for nutritional counseling and/or dietician service under the terms of the reformed and ERISA complaint plans;

8.      Alternatively, an order remanding to Oxford for reevaluation on the merits the denied claims of all class members under a claims review procedure in compliance with MHPAEA and ERISA;

9.      A mandatory injunction required Oxford to process new claims for nutritional counseling and/or dietician services for all class members under the terms of the plans as reformed and interpreted to comply with MHPAEA and ERISA;

10.     Disgorgement of any profits Oxford may have realized by virtue of its violation of MHPAEA;

11.     Payment of pre-judgment and post-judgment interest as allowed under ERISA;

12.     Pursuant to 29 U.S.C. § 1132(g), payment of all costs and reasonable attorneys' fees incurred in pursuing this action; and

13.     For such other and further relief as the Court deems just and proper.


DATED: November 30, 2021

By: /s/ Eugene Killian, Jr.
The Killian Firm, P.C.
48 Wall Street, 11th Floor,
New York, NY 10005
212-537-3866

Attorneys for Plaintiffs
Molly C. and Naomi L., on behalf of
themselves and all others similarly situated